UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
PETER WELLS,

          Petitioner,

  -against-                               NOT FOR PUBLICATION
                                        **MEMORANDUM & ORDER**
MARK BRADT, Attica C.F., Superintendent,   12-CV-4829 (CBA)

          Respondent.
------------------------------------------------------x

**AMON, United States District Judge:**

    Petitioner Peter Wells, proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state-court conviction and sentence of first-degree burglary, first-degree robbery, second-degree burglary, third-degree robbery, and grand larceny. Wells asserts due process, Confrontation Clause, and ineffective assistance of counsel ("IAC") claims. For the reasons set forth below, the petition is denied.

## BACKGROUND

### I.    Trial and Conviction

    On November 12, 2005, Wells visited the home of Rose Lucas, a retired 79-year-old woman residing in Queens. He told her that he was collecting money for the Daily News newspaper and that she owed $9. Although she believed that she did not owe Wells any money, she paid him $5 to leave. The next day, when Lucas was returning home with packages in her hand, Wells approached and told her that he would help her carry the last package. Although Lucas told him that she did not need any help, he persisted and brought the last package into her home. Hoping to get rid of Wells, Lucas gave him the remaining $4 to clear the balance that he had said Lucas owed. Wells took the $4 but insisted that he show Lucas some coupons that she had received in her newspaper. While Lucas went upstairs to grab the newspaper, she heard

1

footsteps going toward her kitchen. As she was walking back downstairs, she saw Wells put her wallet in his jacket. Out of fear for her safety, Lucas did not mention what she saw to him. After Wells left, she called the police. When the police arrived, Lucas described him as being about five feet, six inches tall and weighing 165 pounds.

On December 26, 2005, Dorothy Mangum, an 89-year old woman, was at her home in Queens, when her doorbell rang incessantly at about 12:45 p.m. When Mangum opened the door, she saw Wells on the other side of the storm door, which was locked shut. Wells told her that he was with the Newsday newspaper, that he was collecting money for the newspaper, and that she owed $12. Mangum went to her pocketbook and took out the money. As she opened the storm door, he grabbed the money and pulled the door, which swung Mangum around. Wells then put a hard object to her back and told her that he had a gun. Mangum fell into an armchair in the living room and started kicking and punching Wells. Her wallet was by her side in the chair. Before running, Wells took the wallet and a cordless phone from Mangum's right pocket. When the police arrived at her home, Mangum described her attacker as a black man who was about five feet, five inches tall, and weighed about 170 pounds. She also said he was wearing a baseball cap with a red edge on it.

On December 27, 2005, police created a photo array including a photograph of Wells and showed the array to Mangum at her home. She stated that she recognized Wells among the individuals in the array, but she also indicated that she would like to see him in person. A detective placed his initials under Wells' photograph and wrote down what Mangum had said. That same day, a different detective took an unsigned copy of the photo array to Lucas' home for her to identify the perpetrator. Lucas selected Wells' photograph.

Wells was arrested on February 20, 2006. The second detective, who gave Lucas the photo array, contacted the two victims and brought them to the 113th precinct without informing them about the arrest. At the precinct, each of them separately viewed a lineup and identified Wells.

In the New York Supreme Court, Queens County, prosecutors charged Wells with first- and second-degree burglary, in violation of N.Y. Penal Law §§ 140.25(2) and 140.30(4); first- and third-degree robbery, in violation of N.Y. Penal Law §§ 160.05 and 160.15(4); and fourth-degree grand larceny, in violation of N.Y. Penal Law § 155.30. (D.E. # 28 at 4–5.) After his indictment, Wells moved to suppress any in-court testimony identifying him as the culprit because the prior identifications were unduly suggestive under United States v. Wade, 388 U.S. 218 (1967), and Gilbert v. California, 388 U.S. 263 (1967). Over three days from August to October 2006, the trial court held a Wade hearing. During the proceedings, Wells asked the court to allow him to subpoena and question Lucas and Mangum. The court denied the subpoena request and suppression motion, finding that neither the photo arrays nor the lineups were suggestive.

Wells proceeded to a jury trial. During the first round of voir dire, both sides thought Lableke Kirkland was an acceptable juror. He consequently was sworn in. Shortly thereafter, Kirkland informed the trial court that he would have a problem paying attention because he worked late-night shifts Sunday to Thursday from midnight to eight in the morning. Wells argued that Kirkland should remain on the jury and the prosecution argued for his discharge. The trial court agreed with the prosecution, discharged Kirkland, and replaced him with another juror before the end of voir dire. (See D.E. # 28-6 at 77–78.)

The jury found Wells guilty on all counts. On January 23, 2007, the trial court sentenced him to concurrent prison terms of 25 years to life (for the first- and second-degree burglary and

first-degree robbery counts) and 20 years to life (for the third-degree robbery and fourth-degree grand larceny counts).

## II. Direct Appeal

Wells appealed to the Second Department. In a brief filed by counsel, he argued, among other things, (1) that the trial court improperly excused Kirkland as a juror, and (2) that the trial court improperly refused to instruct the jury regarding an affirmative defense to the first-degree robbery and first-degree burglary counts—that the object displayed during the incident was not a loaded weapon capable of causing death or serious physical injury. In a supplemental brief that Wells filed pro se, he argued (3) that the trial court erred by not allowing him to subpoena the complaining witnesses to testify at the Wade hearing; and (4) that the trial court erred by not admitting a felony complaint against him as evidence to impeach Mangum.

On June 16, 2009, the Second Department rejected the four arguments. The appellate court found that the lower court properly exercised its discretion in denying Wells' request to subpoena Lucas and Mangum as witnesses at the Wade hearing, and that the lower court did not err in discharging Kirkland as a juror. People v. Wells ("Wells I"), 882 N.Y.S.2d 150, 151–52 (2d Dept. 2009). The Second Department also found that Wells was not entitled to the affirmative-defense jury charge because he failed to present sufficient evidence implicating the defense. Id. at 152. Without elaboration, the Second Department rejected Wells' pro se evidentiary argument and other "contentions . . . raised in his supplemental pro se brief" as "without merit." Id. at 153.

Wells was granted leave to appeal to the New York Court of Appeals. At the Court of Appeals, he raised the same four arguments. On December 14, 2010, the Court of Appeals affirmed the Second Department's decision. See People v. Wells ("Wells II"), 941 N.E.2d 739, 739–40 (N.Y. 2010). The Court of Appeals found that that the trial court did not abuse its

discretion in discharging Kirkland and finding him "incapable of properly performing his duties" as a sworn juror, because the trial judge was in the "best position to assess the juror's level of attentiveness." Id. at 739. The Court of Appeals found that Wells' affirmative-defense argument was "not preserved for review," and that the pro se arguments "do not require reversal." Id. at 740.

On March 11, 2011, Wells sought a writ of certiorari in the United States Supreme Court on sentencing issues unrelated to the four arguments addressed above. The Supreme Court denied the petition on October 3, 2011. See Wells v. New York ("Wells III"), 132 S. Ct. 123, 123 (2011).

### III. Federal Habeas Petition and § 440.10 Motion

On September 24, 2012, Wells commenced the instant action. At Wells' request, the Court stayed the case on February 25, 2013, to allow him to exhaust his state-court remedies for the IAC claims by filing a motion to vacate the judgment pursuant to § 440.10 of the New York Criminal Procedure Law. On April 13, 2013, Wells filed his § 440.10 motion, in which he argued deprivation of effective assistance when (1) "defense counsel during voir dire stated to the prospective jurors that the defendant had admitted things to the police," and when (2) "counsel failed to re-open the Wade hearing to question one of the complainants." (D.E. # 28-4 at 186.)

On June 4, 2013, the state court denied Wells' motion. (D.E. # 28-4 at 186–89.) The trial court found that Wells was procedurally barred from raising his IAC claims, because he "raised or should have raised these claims on appeal." (Id. at 188.) In the alternative, the trial court found that Wells' claims were meritless because he "failed to provide any objective evidence" to support the IAC claims. (Id.) On November 4, 2013, the state court denied Wells' motion for leave to appeal the § 440.10 order. Thereafter, Wells filed an amended habeas petition in this Court. (D.E. # 23 ("Amended Pet.").)

5

## STANDARD OF REVIEW

This Court may grant habeas relief to a state prisoner only for violations of federal law. 28 U.S.C. § 2254(a). But the Court may not grant habeas relief based on procedurally defaulted federal claims—those denied "by the application of a state procedural rule" in state court, Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014)—unless the prisoner (1) "demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice." McLean v. McGinnis, 29 F. Supp. 2d 83, 90 (E.D.N.Y. 1998), aff'd, 189 F.3d 461 (2d Cir. 1999).

The Court generally will defer to "the judgment of a State court" on federal claims "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). The Court may consider the already decided federal claim on the merits only if an exception to § 2254(d) deference applies. The first exception is when the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ." Id. § 2254(d)(1). The second is when the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.

## DISCUSSION

### I. Pretrial Identification Hearing

Wells claims that the trial court deprived him of his "right to call" Lucas and Mangum at the state-court Wade hearing. (See Amended Pet. at 6.) At the Wade hearing, Wells requested to question the identifying witnesses because there were constitutional questions as to the suggestiveness of the photo array and lineup identification. Wells asserted that the witnesses had seen photos of him in a police flyer and/or in a contemporaneously published article in the Daily

6

News. (D.E. # 28-5 at 163.) Wells also claimed that the record surrounding the identifications was incomplete because the government's witnesses were unable to testify whose initials appeared on the photo arrays used prior to the in-person lineups, and because there were unanswered questions regarding one of the "filler" photos on the array. (Id. at 163–64.) Wells now repeats these arguments.

The Court denies habeas relief on the Wade issue for two principal reasons. First, Wells fails to state a cognizable constitutional claim concerning the motion to subpoena the identifying witnesses. The Sixth Amendment "grants a defendant the right to call 'witnesses in his favor,' a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment." Rock v. Arkansas, 483 U.S. 44, 52 (1987). But the right is "not absolute," Ronson v. Comm'r of Corr. of N.Y., 604 F.2d 176, 178 (2d Cir. 1970), and trial courts have "'wide latitude' to exclude evidence that is 'repetitive [or] only marginally relevant,'" Crane v. Kentucky, 476 U.S. 683, 689 (1986) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "Generally, the discretionary exclusion of an identifying witness by a trial judge at a pre-trial [Wade] hearing does not rise to the level of constitutional error." Duran v. Miller, 322 F. Supp. 2d 251, 257 (E.D.N.Y. 2004); see also id. (citing cases). Indeed, in denying the request to call the identifying witnesses, the trial court recognized that a defendant has no right to call witnesses under New York law, and that the court has discretion whether to allow the defendant to do so.[1] (D.E. # 28-5 at 160–63.)

---

[1] In affirming the trial-court decision, the Second Department found that the "hearing court providently exercised its discretion." Wells I, 882 N.Y.S.2d at 151. And the Court of Appeals upheld the Second Department, finding without elaboration that the Wade argument "d[id] not require reversal." Wells II, 941 N.E.2d at 740. The Court focuses on the trial court's decision because "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Wilson v. Sellers, 138 S. Ct. 1188, 1194 (2018) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Second, the state court acted within its discretion in denying Wells' motion and concluding that the identification procedure was not unduly suggestive without hearing from these witnesses. See Duran, 322 F. Supp. 2d at 257. Under Wade and its progeny, in-court identifications based on out-of-court ones should be suppressed if the out-of-court identification process was "impermissibly suggestive" and the suggestive nature "raise[s] 'a very substantial likelihood of irreparable misidentification.'" Jackson v. Fogg, 589 F.2d 108, 111 (2d Cir. 1978) (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)). In light of hearing testimony of a detective who spoke with Lucas and Mangum, the trial court found the identification process not to be impermissibly suggestive. (D.E. # 28-5 at 165.) The detective testified that Lucas and Mangum never saw any suggestive materials such as flyers prior to identifying Wells in the lineups and photo arrays. (See id. at 133–35.) Reliance on the detective's testimony was reasonable. Moreover, the trial court correctly dismissed Wells' concerns as "speculations" because he provided no supporting evidence. (Id. at 164.)

For these reasons, the Court denies Wells' claim concerning the pre-trial Wade hearing.

## II. Discharge of Sworn-In Juror

In his petition, Wells challenges the dismissal of Kirkland as a juror, claiming the decision violated § 270.15 of the New York Criminal Procedure Law, which sets the standards New York courts are to follow in determining whether to discharge jurors.[2] In rejecting Wells' claim, the Court of Appeals found that the trial court did not abuse its discretion in discharging Kirkland and finding him "incapable of properly performing his duties" as a sworn juror, because the trial judge was in the "best position to assess the juror's level of attentiveness." Wells II, 941 N.E.2d at 739.

---

[2] Wells also cites to the Sixth and Fourteenth Amendments and to Crist v. Bretz, 437 U.S. 28 (1978), a case involving double jeopardy, but he fails to explain the applicability of those citations to Kirkland's discharge.

8

The Court of Appeals also rejected Wells' § 270.15 argument because it was not preserved for appellate review. Id. at 739–40.

This claim does not entitle Wells to habeas relief. First, the § 270.15 claim is procedurally defaulted, and Wells fails to show cause for the default, prejudice, or a fundamental miscarriage of justice. See McLean, 29 F. Supp. 2d at 90. Second, § 270.15 is a provision of state law. Section 2254 authorizes federal habeas courts to grant relief only on federal claims. See 28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.").[3]

### III. Felony Complaint as Impeachment Evidence

When Wells' counsel was cross-examining Mangum during trial, he asked whether Wells injured her during the robbery. (D.E. # 28-6 at 226.) Mangum said no. Counsel then asked her about speaking to detectives and telling one of them that Wells caused her physical pain. (Id. at 226–27.) Mangum testified that she did not say Wells caused her physical injury. (Id. at 226–27.) On cross-examination, a police detective testified that Mangum did tell him that she suffered pain to her back and hip. (Id. at 267.) Wells' counsel attempted to introduce the detective's signed felony complaint to show inconsistencies between Mangum's statements. (Id. at 265–66.) The court excluded the complaint, ruling that Wells' counsel was "not doing it properly," and that the complaint was not subject to judicial notice. (Id. at 266.) Wells contends that the evidentiary ruling about the felony complaint denied him his due process right to a fair trial and his right to be confronted by witnesses.

---

[3] To the extent that Wells argues a denial of his due process right to a fair trial based on the discharge, the Court does not find the claim to be exhausted in the state courts. (See Opp'n at 22.)

Although Wells did not make the due process argument before the Second Department, (see D.E. # 28-1 at 7–11), he did before the Court of Appeals, (see D.E. # 28-2 at 211–21). Without elaboration, the Court of Appeals said the argument "d[id] not require reversal." Wells II, 941 N.E.2d at 740. This Court need not decide whether the due process claim was adjudicated on the merits, as opposed to denied on preservation grounds. See, e.g., Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002). The due process claim would fail even if § 2254(d) deference were found not to apply and de novo review were allowed. In acknowledging the "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts," the Supreme Court has consistently reaffirmed the principle that the United States Constitution "leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" Crane v. Kentucky, 476 U.S. 683, 689–90 (1986) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). Here, the felony complaint was cumulative because the record already included impeachment testimony contradicting Mangum's statements; the police detective testified that Mangum said she was physically injured.

Like the due process argument, the Confrontation Clause argument was raised not in the Second Department brief but rather in the Court of Appeals brief. The Court of Appeals said the argument "d[id] not require reversal." Wells II, 941 N.E.2d at 740. Once again, the Court need not determine whether the decision was an adjudication on the merits, because even under de novo review, the Confrontation Clause argument fails. The constitutional provision "is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities through cross-examination." Delaware v. Fensterer, 474 U.S. 15, 22 (1985) (per curiam). Here, Wells' counsel through cross-examination revealed the contradiction in Mangum's

testimony. See also Nevada v. Jackson, 569 U.S. 505, 512 (2013) ("[T]his Court has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." (emphasis in original)).

## IV. Jury Instruction Regarding Affirmative Defense

Wells claims that the trial court deprived him of due process by refusing to give a jury instruction on the affirmative defense that the weapon he used to threaten Mangum was not a loaded weapon readily capable of causing death or serious injury. On direct appeal, the New York Court of Appeals held that Wells' affirmative-defense argument was "not preserved for review." Wells II, 941 N.E.2d at 740. The claim is thus procedurally defaulted, and Wells fails to show cause for the default, prejudice, or a fundamental miscarriage of justice. See McLean, 29 F. Supp. 2d at 90.

In any event, the claim fails on the merits. "[D]ue process does not require the giving of a jury instruction when such charge is not supported by the evidence." Blazic v. Henderson, 900 F.2d 534, 541 (2d Cir. 1990). Here, the evidence at trial established that Wells entered Mangum's home, placed a "very hard" object to her back, and told her that he had a gun. The record does not reasonably indicate that the object was not a loaded weapon readily capable of causing death or other serious physical injury. Thus, habeas relief based on the affirmative defense is denied.

## V. Ineffective Assistance of Counsel

Wells made two IAC claims in his § 440.10 motion: that (1) during voir dire, his counsel said he had made certain admissions to the police, and that (2) his counsel failed to request that the trial court reopen the Wade hearing to question one of the alleged victims. (See D.E. # 28-4 at 186.) The claims are procedurally barred because Wells raised them first in a § 440.10 motion, not on direct appeal, (see id. at 188); see also N.Y. Crim. Proc. Law § 440.10(2)(c), and because

he fails to show cause for the default, prejudice, or a fundamental miscarriage of justice, see McLean, 29 F. Supp. 2d at 90.

In any event, neither of these alleged errors can satisfy either prong of the Strickland v. Washington, 466 U.S. 668 (1984), ineffective assistance test. First, Wells has not shown that "counsel's performance was deficient." Id. at 687. Wells has not demonstrated why his counsel's voir dire questions were not a permissible "tactical decision[]" geared toward eliminating jurors predisposed against him. Id. at 689. Nor has Wells shown that the trial court would have re-opened the Wade hearing had his counsel made the request. Counsel is not ineffective for failing to make meritless requests. See, e.g., Aparicio v. Artuz, 269 F.3d 78, 99 n.10 (2d Cir. 2001).

Even if either of these alleged mistakes did satisfy the first prong of Strickland, Wells has not shown that counsel's "performance prejudiced the defense." Strickland, 466 U.S. at 687. As in Lynn v. Bliden, 443 F.3d 238, 249 (2d Cir. 2006), "[t]here is nothing in the Record before us to suggest that, had the Wade hearing been reopened, [Lucas'] identification of [Wells] would have been suppressed due to an improper police procedure." And if counsel's voir dire questions about prior admissions were asked in error, that "isolated error" was not "sufficiently egregious and prejudicial" to undermine the "fundamental fairness" of Wells' trial. Marry v. Carrier, 477 U.S. 478, 496 (1986).

Accordingly, habeas relief on the IAC claims is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Wells' petition for a writ of habeas corpus. Because Wells has not made a substantial showing of the denial of a constitutional right, a

certificate of appealability will not issue. 28 U.S.C. § 2253. The Court respectfully directs the Clerk of Court to enter judgment accordingly and close the case.

    SO ORDERED.

Dated: September 10, 2018
      Brooklyn, New York

s/Carol Bagley Amomn

Carol Bagley Amon
United States District Judge